UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER SHAWN YOUNG,

                                    Plaintiff,              No. 07-CV-6312 CJS

   -vs-

DR. ALAN SMITH, DR. GERALD CONIGLIO,       DECISION AND ORDER

                                  Defendants.

_____

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 ("Section 1983") in which Christopher Young ("Plaintiff"), a prison inmate confined at Attica Correctional Facility ("Attica"), claims that Dr. Alan Smith and Dr. Gerald Coniglio ("Defendants") violated his Eighth Amendment rights by denying him appropriate medical treatment for a knee injury. Now before the Court is Defendants' motion [#19] for summary judgment. For the reasons that follow, the application is granted.

BACKGROUND

Unless otherwise noted, the following are the facts of the case viewed in the light most-favorable to Plaintiff. On March 30, 2006, Plaintiff was playing basketball in the prison recreation yard when he suffered a ruptured patellar tendon in his left knee. Plaintiff was taken to Wyoming County Community Hospital ("the hospital"), where he was examined by defendant Alan Smith, M.D. ("Smith"), an emergency room physician. Smith was employed by a private medical group which had contracted with the hospital to

1

provide medical services.  Smith determined that Plaintiff required surgery, and scheduled him to see an orthopedic surgeon the following morning.  In the meantime, Smith provided Plaintiff with pain medication, a leg "immobilizer" and crutches.  Smith discharged Plaintiff from the hospital early in the morning of March 31, 2006.

Later that morning, Plaintiff was examined at Attica's orthopedic clinic by Gerald Coniglio, M.D. ("Coniglio"), an orthopedic surgeon.  Coniglio provided orthopedic medical services to inmates pursuant to a contract with the New York State Department of Correctional Services ("DOCS").   Congilio scheduled surgery to take place on April 4, 2006.

On April 4, 2006, Coniglio performed orthopedic surgery to repair Plaintiff's fractured patella, using a procedure that re-attached the patella using surgical wire.  Coniglio also prescribed "extensive physical therapy/rehabilitation." (Plaintiff's Memo of Law at 10).  Following the surgery, Plaintiff complained "of the wires being extremely to[o] tight, and [of] the fact that he couldn't bend his knee," to which Coniglio responded that the knee "would loosen up eventually." *Id*.

Almost two months later, on June 24, 2006, Plaintiff was riding an exercise bicycle when he began to experience pain in the knee.  On June 26, 2006, Coniglio examined Plaintiff and diagnosed another fracture of the patella, requiring further surgery. (Coniglio Affidavit [#22], Exhibit B) ("There is nonunion at the junction of the main patellar fragment and the distal fragment.").  Prior to surgery, Plaintiff told Coniglio that he did not want his patella removed, unless he could have a prosthetic patella, to which Coniglio responded that "there was no such thing as a prosthetic knee cap without a total knee replacement." *Id*. at ¶ 9.  On June 27, 2006, Coniglio performed a second surgery to repair the patella,

2

during which he removed "several small fragments of [P]laintiff's knee." *Id*. at ¶ 10. On July 20, 2006, Coniglio noted that he removed the bone fragments "because they were necrotic."[1] (Plaintiff's Opposition to Summary Judgment [#30-2] at 67).

On June 22, 2007, Plaintiff commenced the instant action. With regard to Smith, Plaintiff asserts claims for "medical malpractice - personal injury (violating Eighth Amendment)," based on Smith's alleged improper placement of a leg brace, and on his decision not to provide surgery on an emergency basis. As for Coniglio, Plaintiff describes his claim as "medical malpractice violation of my Eighth Amendment rights." In that regard, Plaintiff alleges that Coniglio improperly delayed for four days, and then botched the initial surgery by installing surgical wire too tightly. Further, Plaintiff states that, during the second surgery, Coniglio removed part of his knee cap against his wishes, and failed to provide a prosthetic replacement.

On November 21, 2008, Defendants filed the subject motion for summary judgment.[2] Smith maintains that he cannot be liable under Section 1983, because when he provided medical treatment to Plaintiff, he was not acting "under color of state law." In that regard, Smith contends that when he treated Plaintiff, he was a private physician with a contract to provide medical services to Wyoming County Community Hospital. Smith was not employed by DOCS or Attica, and had no agreement with them to treat inmates. Smith further states that he provided appropriate emergency medical care to Plaintiff, by

---

[1] "Necrosis" is defined as "death of living tissue," and specifically, "death of a portion of tissue differentially affected by local injury." MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY at 466 (1993).

[2] On November 21, 2008, Defendants served Plaintiff with a "Notice to Pro Se Litigants" as required by Rule 56.2 of the Local Rules of Civil Procedure. (Docket No. [#25]). Morover, on November 26, 2008, the Clerk of the Court mailed Plaintiff an additional *Irby* notice. (Docket No. [#29]).

diagnosing a torn patellar tendon, immobilizing the leg, providing Plaintiff with crutches and pain medication, and referring him to Coniglio for follow-up care. Smith states that "[t]he need for surgery was not immediate and it would have been inappropriate for [him] to have operated on [P]laintiff." (Smith Affidavit [#21] at ¶ 16).

Coniglio, on the other hand, concedes that he acted under color of state law, since he provided orthopedic services to DOCS pursuant to a service agreement. However, he maintains that he provided Plaintiff with appropriate medical care. In that regard, he states, first, that the delay in operating on the knee was appropriate, because "by waiting the fractures heal better." (Coniglio Affidavit [#22] at ¶ 6). Coniglio further states that on April 4, 2006, he correctly performed surgery to repair Plaintiff's fractured patella: "Plaintiff complains that I caused the second surgery by making the wires too tight. This is inaccurate as the wires were placed with the proper tension." *Id*. at ¶ 13. Coniglio indicates that on June 26, 2006, he saw Plaintiff again and determined that further surgery was needed to repair the patella. Coniglio agrees that Plaintiff told him that he did not want the patella removed unless he could have a prosthetic knee cap, but he maintains that he correctly advised Plaintiff that "there was no such thing as a prosthetic knee cap without a total knee replacement." *Id*. at ¶ 9. Coniglio further contends that during the surgery, "[t]here were several small fragments of [P]laintiff's knee that had to be removed, but [he] did not remove the patella." *Id*. at ¶ 10. Additionally, Coniglio states that the removal of "4 or 5 pieces of comminuted bone" was "medically necessary and left the knee cap intact." *Id*. at ¶ 14.

In opposition, Plaintiff contends that Smith acted under color of law, since he "was an employee of a company wh[ich] was under contract with the hospital, wh[ich] was

4

essentially under contract with [DOCS]." (Plaintiff's Memo of Law at 1). Plaintiff further states that Smith treated him in an area of the hospital that was a "secure designated area specifically designed for the inmate patients from [DOCS]," and therefore "knew of a working relationship and contract between the hospital and [DOCS]." (Plaintiff's Memo of Law at 7). Plaintiff also maintains that Smith should have performed surgery to repair his knee on the night of the injury. Plaintiff contends that Smith's decision to refer Plaintiff to Coniglio resulted in him "suffering" for four days while he awaited surgery. (Plaintiff's Memo of Law at 1). Plaintiff further states that "Smith's choice to place an immobilizer on [the leg while Plaintiff's] knee-cap [was] still sitting on his thigh muscle area caused muscle damage to the thigh muscle." (Plaintiff's Statement of Facts ¶ 7). As for Coniglio, Plaintiff states that Coniglio must have over-tightened the wires in his knee, since the patella subsequently broke while Plaintiff was "performing physical therapy exercises that Dr. Coniglio ordered." *Id*. at ¶ 13. Plaintiff further states that Coniglio told him that during the second surgery, he intended to remove the entire patella, and that Plaintiff objected to such removal, unless Coniglio was going to install a prosthetic patella. According to Plaintiff, Coniglio responded "that there is no such thing as a prosthetic knee-cap, and that it was common practice to remove the entire knee-cap replacing it with nothing." *Id*. at ¶ 17. Plaintiff states that he subsequently reiterated to Coniglio that he wanted the knee cap repaired or replaced, but not removed, to which Coniglio responded that he would assess the damage but not remove the knee cap. Plaintiff maintains, though, that during surgery Congilio removed "one fourth (1/4) of his knee-cap" without his consent. *Id*. at ¶ 21. Plaintiff further contends that he eventually required a third surgery, to repair mistakes that Coniglio made during the second surgery. *Id*. at ¶ 22.

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

6

genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).

Private doctors who provide medical care to state-prison inmates may be subject to liability under Section 1983. *See, Sykes v. McPhillips*, 412 F.Supp.2d 197, 202 (N.D.N.Y. 2006) ("It is clear that medical care providers working in a prison are state actors. It is also clear that hospitals and physicians that provide care outside of the prison facility may be held to be state actors when they work pursuant to contract.") (*citing West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250 (1988)); *see also, Doe v. Torres*, No.

7

05 Civ.3388 JSR GWG, 2006 WL 290480 at *9 (S.D.N.Y. Feb. 8, 2006) ("With regard to doctors who treat prison inmates, the Supreme Court has held that it is 'the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State' in a suit under 42 U.S.C. § 1983.") (*quoting West v. Atkins*, 487 U.S. at 55-56 (1988)).

Plaintiff is asserting Eighth Amendment claims directed at his medical treatment, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)("It is well-established that mere disagreement over the proper treatment does not

8

create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Applying the foregoing applicable principles of law, the Court finds that Smith is entitled to summary judgment. Even assuming, for purposes of this Decision and Order, that Smith acted under color of state law, it is clear that he provided Plaintiff with emergency medical treatment, including pain medication, x-rays, a leg brace, and a referral to an orthopedic surgeon. Plaintiff's claim amounts to a mere disagreement over treatment, which is not actionable under the Eighth Amendment. Plaintiff has provided no evidentiary proof in admissible form that immediate surgery was warranted or that Smith was qualified to perform such surgery. Additionally, Plaintiff mistakenly blames Smith for the four-day delay in receiving surgery. However, Smith immediately referred Plaintiff to see Coniglio, who examined Plaintiff the same day. If was Coniglio's decision to perform surgery several days later, not Smith's. Accordingly, Smith is entitled to summary judgment.

The Court also finds that Coniglio is entitled to summary judgment. With regard to the delay in performing the first surgery, Coniglio maintains that such a delay actually was beneficial to Plaintiff's recovery. Plaintiff disputes this, but has not provided any evidentiary proof in admissible form to support his view. Plaintiff's disagreement with Coniglio's decision is not actionable under Section 1983. The Court also notes that during the delay, Plaintiff was provided with pain medication and a knee brace.

With regard to Coniglio's alleged mistakes during the two surgeries, including the alleged over-tightening of surgical wire, Plaintiff's allegations amount to disagreements over treatment, which at most might be actionable as medical malpractice.

9

Plaintiff further maintains that Coniglio chose an "easier and less efficacious treatment plan," by removing pieces of the patella, rather than attempting to graft the broken pieces together or providing a prosthetic patella. However, Coniglio maintains that the pieces of bone that he removed were small pieces of "comminuted bone,"[3] which were "necrotic," and which "had to be removed," and that a prosthetic patella could not be utilized without a knee replacement. Although Plaintiff disagrees with both contentions, the unsupported opinion of a layman such as Plaintiff is not sufficient to raise a triable issue of fact on a medical issue of this nature. *See, Green v. Senkowski*, 100 Fed.Appx. 45, 47, 2004 WL 1292786 at *2 (2d Cir. 2004) ("Despite this medical evidence, Green now asserts that he is afflicted with carpal tunnel syndrome. This self-diagnosis . . . unsupported by any medical evidence in the record, is not enough to defeat summary judgment.") (citations omitted). Moreover, to the extent that Plaintiff complains that Coniglio removed parts of his patella without first obtaining informed consent, the allegation fails to state an Eighth Amendment claim. *See, Taylor v. Smolinski*, No. 01-CV-0158E(F), 2003 WL 21383015 at *3 (W.D.N.Y. Apr. 18, 2003) (Dismissing 8th Amendment claim based on "surgery without consent.").

CONCLUSION

Accordingly, Defendants' motion [#19] for summary judgment is granted, and this action is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

---

[3]"Comminuted" is defined as "being a fracture in which the bone is splintered or crushed into numerous pieces" or "minute particles." MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY at 135 (1993).

Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
     November 5, 2009        ENTER:


                                      /s/ Charles J. Siragusa
                                      CHARLES J. SIRAGUSA
                                      United States District Judge